WALTER F. STOVER ET AL., APPELLANTS, V. ED MILLER & SONS, INC., A NEBRASKA CORPORATION, APPELLEE.

231 N. W. 2d 700

Filed July 31, 1975. No. 39888.

Marks, Clare, Hopkins, Rauth, Garber & Batt, for appellants.

L. J. Tierney and T. J. Stouffer of Cassem, Tierney, Adams & Henatsch, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is an action for personal injuries and damages that the plaintiff Stover suffered resulting from the par-

tial collapse of one side of an earthen wall in an excavation pit in which the plaintiff was working. The District Court granted summary judgment in favor of the defendant. On appeal the plaintiffs claim that there was a genuine issue of fact present for trial and ask a reversal of the summary judgment in favor of the defendant. We affirm the judgment of the District Court.

On November 19, 1970, Russell Cook, the executive vice president of Wiebe Construction Company (hereinafter referred to as Wiebe), met with Robert Miller of the defendant corporation, at Ed Miller & Sons, Inc., an excavating firm, to discuss a proposed excavation at the Westroads Shopping Center in Omaha, Nebraska. Wiebe was the general contractor working at the Westroads Shopping Center, and the defendant was a construction company specially engaged in the business of subcontracting excavation work. The parties came to an agreement that the defendant would do the excavating work for Wiebe. It is undisputed that at this meeting, it was agreed that Wiebe, the general contractor, would do all *the shoring work*. Shoring refers to the support built next to the sides of an excavation to prevent caving in of the earthen walls. This meeting between Cook and Miller on November 19, 1970, resulted in a contract, written in letter form, dated November 25, 1970, and sent from Cook to Miller. Miller accepted the contract. The contract provided for the defendant excavation corporation to "complete excavation & concrete removal work." The contract also provided that: "The Subcontractor (Ed Miller & Sons, Inc.) shall protect the work of others, prevent and/or repair damage to work of others." There was no *written* provision in the letter contract which stated which party was responsible for the shoring.

The defendant corporation began the excavation work in late November 1970. The defendant completed the work, and removed all men and equipment from the site by December 31, 1970, and did not return to the site

thereafter. The excavation was 30 to 35 feet deep and the sides were approximately perpendicular to the bottom of the excavation. Johnson, a foreman for Wiebe, the general contractor, was in charge of checking the excavation grades as the work progressed, to supervise and inspect the work and insure that the work was being done properly. There is no issue as to this fact. At no time did Johnson inform the defendant that the excavation was not being properly done. In his deposition, introduced in evidence, Johnson testified that at all times he was satisfied with the defendant's work. The evidence undisputedly shows that when the excavation by the defendant was completed, Cook, as the agent of Wiebe, accepted the work as satisfactory. Cook testified that the defendant's work was done properly. Subsequently the defendant was paid in full by Wiebe, the general contractor, for the excavation work, and as mentioned, defendant did not return to the site thereafter. The transaction, the contract, and its performance were completed and accepted.

On or about January 21, 1971, approximately 3 weeks after the defendant completed the excavation work, Wiebe, the general contractor, then began to put in the shoring. Both Johnson and Cook testified that the shoring structure was intended to prevent the wall of the excavation from collapsing.

During the progress of the shoring work, specifically, on January 22, 1971, the plaintiff Stover, an employee of Wiebe, the general contractor, who had accepted the work and was performing the shoring work, began working on the shoring job. After the plaintiff had been working for about 1 hour part of the wall unexpectedly collapsed. A large chunk of the dirt fell on the plaintiff causing the injuries that he complains of in this action.

The general theory of the plaintiff in his action against the defendant subcontractor is that the defendant was negligent in failing to shore the walls. It appears that

the District Court granted a summary judgment to the defendant on the basis that the defendant owed no duty to the plaintiff at the time of the accident, because the defendant had completed the contract, it had been accepted by the general contractor Wiebe, defendant had relinquished control of the premises, and that Wiebe, the general contractor, was actually doing the shoring work at the time the accident happened. The plaintiff now contends in this court that the defendant owed a duty to the plaintiff and that there was sufficient evidence of the defendant's negligence to render summary judgment improper.

In Nebraska, as in the majority of the jurisdictions, the general rule is that one not a party to a construction contract cannot, for injuries received after the acceptance of the completed work by the contractee, maintain an action in tort for the negligent performance of the contract. In Wilson v. North Central Gas Co., 163 Neb. 664, 80 N. W. 2d 685, the plaintiff sustained injuries when she fell over the backfill of an excavation performed by the defendant. The backfill was 3 to 8 inches above the surface of the adjoining land. The defendant had completed the work, and it had been accepted by the owner of the land over 1 month prior to the accident. In holding that the defendant owed the plaintiff no duty since the defendant had no control over the property when the plaintiff was injured, and that the completion of the work had been accepted and approved by the owner of the land, this court said as follows: "A construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the injury or damage is sustained after the work is completed and accepted by the owner." In Shupe v. County of Antelope, 157 Neb. 374, 59 N. W. 2d 710, this court stated: "But we have said of such private contractors that when there is an actual acceptance of

the work this relieved him (subcontractor) from any further duty." See, also, Haynes v. Norfolk Bridge & Constr. Co., 126 Neb. 281, 253 N. W. 344.

We come to the conclusion that the defendant corporation had completed the job at least 3 weeks before the accident occurred, had removed all its equipment and men from the site, and that the general contractor Wiebe had accepted the job as satisfactory and paid the defendant in full, and that therefore under the applicable law, there was no duty owed by the defendant to the plaintiff, and the motion for summary judgment was properly sustained on that ground alone. There is no merit to the plaintiff's contention.

We point out further, that irrespective of whether the defendant owed a duty of care toward the plaintiff, the record demonstrates there is absolutely no evidence that would indicate the defendant acted negligently in the performance of the excavation work or that the defendant should have acted in a manner other than it did. The plaintiff argues that the defendant was negligent in failing to do the shoring work. We have already pointed out that there was no duty on the part of the defendant subcontractor to perform the shoring work. It is apparent that there could be no inference of negligence drawn for a failure to do something that the defendant had no contractual or other duty to perform. On the other hand, the evidence is conclusive to the effect that the duty to shore the walls rested with Wiebe, who assumed this duty subsequent to the performance of the defendant's excavation work, and was engaged in it at the time the accident happened. Even in the absence of the undisputed evidence between the parties as to the responsibility for the shoring, it is clear that by Wiebe's action of beginning to construct the shoring, it left no doubt as to what the terms of the contract were as to the responsibility for the shoring. "The interpretation given a contract by the parties themselves while engaged in the performance of it is one of the best indications

of the true intent of their contract, and should be given great if not controlling influence, * * *." Donahoo v. Home of the Good Shepherd of Omaha, Inc., 193 Neb. 586, 228 N. W. 2d 287. See, also, Lortscher v. Winchell, 178 Neb. 302, 133 N. W. 2d 448. We therefore come to the conclusion that as a matter of law, under the undisputed facts, there was no negligence on the part of the defendant subcontractor in failing to perform the shoring work.

Although unnecessary to the determination of the issue of liability in this case, we discuss the plaintiff's contention that the parol evidence as to the agreement between Wiebe and Miller as to who would be responsible for the shoring work is not admissible in evidence. It is true that the parties to the contract neglected to mention the shoring work in the contract. The plaintiff relies upon the contract provision which stated that: "The Subcontractor shall protect the work of others, prevent and/or repair damage to work of others." It is quite obvious that this provision is equivocal and cannot be said to refer to the responsibility of shoring. If the plaintiff's contention is correct, it would require us to construe this provision to mean that an excavation contractor assumed a liability for all subsequent work done at the location of the excavation under the unwarranted interpretation that the subcontractor "shall protect the work of others." In any event at a minimum there is an ambiguity or a lack of a material provision in the contract that warrants the admission of parol evidence to establish the truth. In Wilderman v. Watters, 149 Neb. 102, 30 N. W. 2d 301, this court said: "It is well established, in the interpretation of a writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine their meaning and intention, but not to vary or contradict the plain terms of the instrument." The undisputed and uncontradicted mutual agreement between Wiebe and the defendant is that they did have

an agreement as to shoring and that the agreement was that Wiebe would be responsible for it. There is no merit to the plaintiff's contention.

In summary, the record conclusively shows that the defendant did not owe a duty toward the plaintiff and further that there was no general negligence or evidence of general negligence of the defendant in failure to perform the shoring obligation.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.