VINCENT DESCIOSE, JR., APPELLANT, V. CHILES, HEIDER & CO., INC., AND SHEARSON/AMERICAN EXPRESS, INC., APPELLEES.

476 N.W.2d 200

Filed October 4, 1991.    No. 88-856.

Robert V. Dwyer, Jr., and Richard D. Cimino, of Dwyer, Pohren, Wood, Heavey & Grimm, for appellant.

Kathleen A. Jaudzemis, of Cline, Williams, Wright, Johnson & Oldfather, for appellees.

WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

GRANT, J.

This case involves only the question of the statute of limitations as applied to plaintiff's action against defendants. Pursuant to Neb. Rev. Stat. § 25-221 (Reissue 1989), the issue of the applicability of the statute of limitations to plaintiff's action was tried separately. Apparently, the parties and the trial court agreed that the issue should be tried to a jury. After trial, the jury answered certain questions submitted to it, and the court ordered certain parts of plaintiff's claims against defendants dismissed and retained one particular claim for trial. Plaintiff has appealed to this court.

On April 24, 1985, plaintiff-appellant, Vincent DeSciose, Jr., filed a petition against defendants-appellees, Chiles, Heider & Co., Inc., and Shearson/American Express, Inc. (hereinafter collectively referred to as defendant), seeking damages resulting from plaintiff's purchase of certain bonds and warrants of Sanitary and Improvement District (S.I.D.) No. 7 of Lancaster County through defendant. The petition sought damages of $287,888.09 plus interest.

The petition set out three "Causes of Action," identified as claims of negligence and fraud, controlled by a 4-year statute of limitations. The original petition set out the securities and dates

of purchase as follows:

| Date of Purchase | Security | Amount |
|---|---|---|
| April 1, 1976 | S.I.D. No. 7 bond | $100,000.00 |
| October 28, 1980 | S.I.D. No. 7 bond | 100,000.00 |
| October 13, 1981 | S.I.D. No. 7 warrant | 50,000.00 |
| July 28, 1982 | S.I.D. No. 7 warrant | 26,424.43 |
| November 24, 1983 | S.I.D. No. 7 warrant | 11,463.66 |

The warrant described as having been purchased on November 24, 1983, was not mentioned again in the subsequently filed petitions and is not considered herein except in a discussion of the confusion it apparently caused.

Defendant's answer admitted the status of the parties and the purchases and generally denied the other allegations of the petition. Among the affirmative defenses pled, defendant alleged that plaintiff's claims were barred by the statute of limitations.

Since the only issue before us is the effect of the statute of limitations on plaintiff's claims, the effect of the statute as to the original petition must be considered. Examination of the original petition shows that of the five transactions set out, only two arose more than 4 years before the filing of the petition. As stated above, the petition was filed on April 24, 1985. If a 4-year statute of limitations is applied, it is clear than any transaction after April 23, 1981, is not affected. That means that the transactions of October 13, 1981, and July 28, 1982, are not subject to dismissal pursuant to a 4-year statute of limitations. (We are not concerned with the November 24, 1983, transaction for the reason set out above.) The original petition, on its face, showed that the 4-year statute of limitations had run on the other two claims, and since the statute might be tolled under certain circumstances, the dispositive question as to those two claims was, When was defendant's allegedly wrongful conduct discovered by plaintiff?

The trial court in its order of dismissal, later discussed, properly preserved the July 28, 1982, claim for further action, but did not so preserve the October 13, 1981, claim. As discussed below, that action was the only error committed by the trial court. The court's judgment is therefore affirmed in part and reversed in part.

Further petitions were filed expanding the scope and number of the challenged transactions between plaintiff and defendant. In an amended petition filed September 2, 1986, the allegations were amended to delete references to the November 24, 1983, warrant purchase and to restate the other S.I.D. No. 7 bond and warrant purchases alleged in the original petition except to allege two $50,000 bonds purchased on October 28, 1980, rather than one $100,000 bond. In the "Fourth Cause of Action" and the "Fifth Cause of Action" set out in this amended petition, plaintiff added failure of consideration and the violation of Neb. Rev. Stat. § 8-1118 (Reissue 1987) to the theories of recovery, in connection with the single S.I.D. No. 7 bond purchased on July 28, 1982.

Additionally, in that amended petition, plaintiff added claims concerning other securities purchased in S.I.D. No. 290 of Douglas County, S.I.D. No. 65 of Sarpy County, and S.I.D. No. 103 of Sarpy County, as follows:

| Date of Purchase | Security | Amount |
| --- | --- | --- |
| May 12, 1980 | S.I.D. No. 290 warrant | $ 1,680.50 |
| May 27, 1980 | S.I.D. No. 290 warrant | 39,819.00 |
| July 1, 1980 | S.I.D. No. 290 warrant | 25,000.00 |
| April 23, 1974 | S.I.D. No. 65 warrant | 10,000.00 |
| November 30, 1978 | S.I.D. No. 103 warrant | 233.40 |
| November 30, 1978 | S.I.D. No. 103 warrant | 14,694.77 |
| November 30, 1978 | S.I.D. No. 103 warrant | 8,411.39 |
| December 19, 1978 | S.I.D. No. 103 warrant | 80,040.05 |
| September 28, 1979 | S.I.D. No. 103 warrant | 100,000.00 |

Plaintiff's second amended petition (the operative petition on which the case was tried) was filed on July 10, 1987. This second amended petition was identical to the amended petition, but added allegations that four bonds of S.I.D. No. 103 with a total value of $140,000 were purchased on May 1, 1980, and that recovery of the value of those bonds was also sought under the "First Cause of Action" (false representations), "Second Cause of Action" (violation of fiduciary relationship), and "Third Cause of Action" (negligence).

The operative second amended petition, in the first 11 paragraphs (numbered I through XI), described as "General Allegations," sets out the following: Plaintiff is a resident of

Omaha, Douglas County, Nebraska. Defendant Chiles, Heider & Co., Inc., is a Nebraska corporation engaged in the business of serving as a stockbroker and investment advisor. Defendant Shearson/American Express, Inc., is a Delaware corporation which in 1983 acquired all the common stock of Chiles, Heider. No issue is presented on this joinder of defendants. All actions herein referred to as done by "defendant" were done before 1983 and were done by Chiles, Heider alone.

The operative petition further alleged that from and after July 24, 1972, defendant maintained an investment securities account for plaintiff and that defendant, "[p]rior to the opening of Plaintiff's investment securities account, and on several occasions thereafter," made certain representations to plaintiff as to defendant's expertise in Nebraska sanitary and improvement districts and as to the financial safety and attractiveness of S.I.D. bonds and warrants.

The petition then alleged, in paragraph VI, that plaintiff purchased from defendant three bonds and two warrants issued by S.I.D. No. 7 of Lancaster County, Nebraska (one bond on April 1, 1976, two bonds on October 28, 1980, one warrant on October 13, 1981, and one warrant on July 28, 1982), in the total principal amount of $276,424.43.

Plaintiff alleged, in paragraph VII, that he purchased three warrants issued by S.I.D. No. 290 of Douglas County (one on each of three different dates in 1980) in the total principal amount of $66,499.50. In paragraph VIII, plaintiff alleged that on April 23, 1974, he purchased one warrant issued by S.I.D. No. 65 of Sarpy County in the amount of $10,000. Plaintiff then alleged, in paragraph IX, that he purchased five warrants of S.I.D. No. 103 of Sarpy County (three on November 30, 1978, one on December 19, 1978, and one on September 28, 1979) and that he purchased four S.I.D. No. 103 bonds on May 1, 1980. These securities were purchased for a total of $343,369.61, although plaintiff's petition erroneously states the total amount to be $203,369.61. The petition then alleged that defendant was fiscal agent or cofiscal agent for each of the S.I.D.'s mentioned above and that none of the obligations had been paid, although some had matured.

The petition then goes on to set out a "First Cause of Action"

in five paragraphs (numbered XII to XV, including XIII-A), the first of which incorporates by reference all of the "General Allegations" set out above. In this part of the operative petition, plaintiff alleged that defendant made false representations of fact or concealed facts from plaintiff and that plaintiff relied on defendant's misrepresentations and purchased the bonds and warrants "described in Paragraphs VI through IX" (which represented all of plaintiff's purchases set out in his operative petition). Plaintiff then alleged he did not discover that the representations were false and fraudulent or that facts had been concealed from him until December 1982. Plaintiff alleged he suffered a loss of $696,293.54, plus interest of $257,406.77, because "said securities are worthless." In this "cause of action," plaintiff prayed for $696,293.54, plus interest.

In his "Second Cause of Action," plaintiff again incorporated the general allegations plus paragraph XV (the allegation that he had not discovered the falsity and concealment of facts until December 1982). He then alleged that defendant failed to disclose to him that defendant was the fiscal agent or cofiscal agent for each of the S.I.D.'s and that defendant told him all the investments were sound and did not tell him of all the facts concerning the various districts. Plaintiff then alleged that this failure of defendant "to speak truthfully as to the bonds and warrants" operated "as a constructive fraud" on plaintiff. In this "cause of action," plaintiff prayed for damages in the identical amount set out in the "First Cause of Action."

In his "Third Cause of Action" (consisting of paragraphs XX through XXII), plaintiff again incorporated the "General Allegations" plus paragraphs XV and XVII (setting out the allegations of facts allegedly not disclosed to plaintiff). Plaintiff then alleged that defendant was negligent in certain respects and breached its duty to plaintiff. Plaintiff again prayed for damages in the identical amount set out in the "First Cause of Action" and the "Second Cause of Action."

In his "Fourth Cause of Action," plaintiff alleged that there was a failure of consideration as to the S.I.D. No. 7 warrant purchased on July 28, 1982, because at the time of purchase

that warrant was worthless or worth substantially less than the $26,424.43 plaintiff paid. In this "cause of action," plaintiff prayed for damages of $26,424.43, "together with prejudgment interest." This amount is included within the sums earlier prayed for.

In his "Fifth Cause of Action," plaintiff alleged that he was damaged in the amount of $26,424.43, because at the time he purchased the S.I.D. No. 7 warrant in July 1982, defendant "knew that S.I.D. No. 7 was experiencing significant financial difficulties," and the defendant violated "Neb. Rev. Stat. §8-1118, R.R.S. (1943)." In this part of his pleading, plaintiff made a tender of the warrant of July 28, 1982, as well as all the warrants "he may have received in payment of interest due on this security from SID No. 7." Plaintiff then requested an attorney fee, pursuant to § 8-1118.

Defendant's answer to the second amended petition alleged and admitted the sales of bonds and warrants as described by plaintiff; generally denied plaintiff's other allegations; and alleged various affirmative defenses, including that "plaintiff's claim and causes of action are barred by the applicable statutes of limitations." Plaintiff's reply denied the allegations of the answer.

As stated above, the issue of the defense relating to the statute of limitations was tried separately. After trial, the jury returned its verdict, consisting of the answers to two questions submitted to the jury by the court:

1. Did the plaintiff discover the fraud or misrepresentation he alleges as to all of the bonds and warrants of SID No. 7 of Lancaster County, Nebraska, (except one of the two bonds sold 11/5/80) on or before April 23, 1981 [4 years before the date of the filing of plaintiff's original petition]?

2. Did the plaintiff discover the fraud or misrepresentation he alleges as to all of the warrants of SID No. 290 of Douglas County, Nebraska, the warrant of SID No. 65 of Sarpy County, Nebraska, and all of the warrants of SID No. 103 of Sarpy County, Nebraska, on or before September 1, 1982, [4 years before the filing of plaintiff's amended petition]?

The jury answered each question "yes." The trial court accepted the verdict and on September 15, 1987, made the following docket entry:

> Pursuant to verdict, ordered, that plaintiff's petition be and the same is hereby dismissed as to all claims in his first and second causes of action except the warrant issued by SID No. 7 of Lancaster County purchased by plaintiff on July 28, 1982 and bonds issued by SID No. 103 of Sarpy County, Nebraska, purchased by plaintiff on May 1, 1980.
>
> By way of ruling on prior motions of defendants, it is further ordered that plaintiff's petition is dismissed as to the first and second causes of action as to bonds issued by SID No. 103 of Sarpy County, Nebraska, purchased by plaintiff on May 1, 1980. It is further ordered that plaintiff's petition is dismissed as [sic] the third and fifth causes of action.

Plaintiff timely appealed, assigning as errors to this court: (1) The trial court erred in giving instructions Nos. 6 and 8; (2) the trial court erred in not instructing the jury that defendant was the agent of plaintiff, with a fiduciary duty to plaintiff in certain specific areas; and (3) the trial court erred in dismissing, in part, plaintiff's first and second causes of action and plaintiff's third and fifth causes of action because "these causes of action contained an issue of material fact with respect to fraudulent concealment to be decided by the jury, and about which the trial judge failed to instruct."

We first note that the five "causes of action" set out in plaintiff's operative petition are not separate causes of action. The petition alleges 18 transactions on 12 different days. The first "cause of action" seeks recovery of $696,293.54, representing the total amount of the 18 transactions, on the theory of fraud; the second seeks the recovery of the same amount on the theory of violation of a fiduciary duty; the third seeks the same amount on the theory of negligence; the fourth seeks the recovery of $26,424.43 on the theory there was a failure of consideration with respect to one warrant in S.I.D. No. 7; and the fifth seeks recovery of the same amount, $26,424.43, with respect to the same warrant because of a violation of § 8-1118. The petition really seeks recovery of a

total amount on three different theories of law plus recovery of a certain part of the amount based on two additional theories. This pleading approach resulted in some degree of chaos both in the trial and in the analysis on review. We specifically do not approve of the form of the pleadings to submit this case, but we will treat the case in the manner it was submitted by the parties and tried to the court. See, *Brown v. Clayton Brokerage Co.*, 238 Neb. 646, 472 N.W.2d 381 (1991); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991).

First of all, it is important to note that plaintiff does not challenge the sufficiency of the evidence to support the jury findings on the statute of limitations questions.

Examination of the petitions shows that except for the S.I.D. No. 7 warrants purchased on October 13, 1981, and July 28, 1982 (purchased within 4 years of the filing of the original petition) all of plaintiff's purchases were made more than 4 years before the filing of the petitions in which such purchases are first mentioned. Since the statute of limitations had run as to all of plaintiff's purchases from defendant except the two described above, the dispositive question is whether and when the statute was tolled by defendant's conduct as to those other transactions.

Plaintiff's five theories of recovery, identified as "causes of action," may be summarized as follows:

1. Fraudulent misrepresentation: Plaintiff alleges, in regard to all of the above transactions, that he relied on the defendant's false representations of fact or concealed facts and that he did not discover the false and fraudulent or concealed facts until December 1982. He prays for the principal amount of $696,293.54, plus interest of $257,406.77, because "the securities are worthless."

2. Breach of Fiduciary Duty: Plaintiff alleges that the defendant failed to disclose its status as fiscal or cofiscal agent of the various S.I.D.'s, told him that all of his investments were sound, and did not tell him all the facts regarding the various districts, which resulted in constructive fraud upon the plaintiff, and that plaintiff had not discovered that fraud until a time within 4 years of the filing of his various petitions. Again the plaintiff prayed for $696,293.54.

3. Negligence: Plaintiff alleges that defendant was negligent and breached its duty to the plaintiff as to all of the above transactions, again resulting in $696,293.54 worth of harm to the plaintiff.

4. Failure of Consideration: This theory incorporates only those allegations pertaining to S.I.D. No. 7 in Lancaster County, stating that the warrant he purchased on July 28, 1982, lacked consideration because it was worthless at the time, or worth substantially less than the $26,424.43 the plaintiff paid.

5. Securities Fraud: Referring to the same allegations regarding S.I.D. No. 7, plaintiff alleges that the defendant knew that S.I.D. No. 7 was experiencing significant financial difficulties and that it had violated § 8-1118. The plaintiff then tendered the warrant dated July 28, 1982, "as well as all other warrants he may have received in payment of interest due" on the warrant, asking for interest and reasonable attorney fees.

Plaintiff first contends that the trial court erred in instructing the jury in instruction No. 6 that "[t]he plaintiff has the burden of proof by a preponderance of the evidence that he did not discover the fraud or misrepresentation until at a time within four years of his bringing suit as to the bonds and warrants involved." In support of his position, plaintiff cites *League v. Vanice*, 221 Neb. 34, 42, 374 N.W.2d 849, 854 (1985), where we stated, "A defendant alleging the statute of limitations as an affirmative defense has the burden to prove such defense." Instruction No. 8 defines the burden of proof, and the two challenged instructions will be considered together.

Defendant responds that, as set out in *S.I.D. No. 145 v. Nye*, 216 Neb. 354, 355, 343 N.W.2d 753, 754 (1984), "[i]f a petitioner alleges a cause of action ostensively barred by the statute of limitations, such petition, in order to state a cause of action, must show some excuse tolling the operation and bar of the statute." To the same effect see *Jones v. Johnson v. Pullen*, 207 Neb. 706, 300 N.W.2d 816 (1981), and *George P. Rose Sodding & Grading Co. v. Dennis*, 195 Neb. 221, 237 N.W.2d 418 (1976).

We feel the rule set out in *League v. Vanice, supra*, must be expanded to state that where a petition does not disclose on its face that it is barred by the statute of limitations, a defendant

must plead the statute as an affirmative defense, and, in that case, the defendant has the burden to prove that defense. If, however, the petition on its face shows that the cause of action is barred by the statute, the plaintiff must allege facts to avoid the bar of the statute of limitations and, at trial, has the burden to prove those facts.

As we stated in *In re Estate of Anderson*, 148 Neb. 436, 438, 27 N.W.2d 632, 634 (1947):

It has long been the rule that: "In this state the statute of limitations is a statute of repose; it prevents recovery on stale demands. If the petition in an action sets forth facts which show upon its face that it is barred by statute, and in avoidance thereof further facts are alleged to remove the bar of the statute, all of which are positively denied by the answer, together with the added allegations that the cause of action is barred by the statute of limitations, the plaintiff cannot recover without first establishing the facts so alleged in avoidance."

In the case before us, plaintiff has set out facts which in themselves show the statute of limitations has run as to most of the claims in issue. Plaintiff properly then made allegations of fact showing, if proved, that the statute had been tolled. In that situation, the plaintiff must prove all the allegations of his petition in order to prove a case against defendant. The trial court did not err in placing the burden of proof on plaintiff in the circumstances of this case and thus did not err in submitting instructions Nos. 6 and 8 to the jury.

Plaintiff then contends that the trial court erred in not instructing the jury that defendant was an agent of plaintiff and that, as an agent, it had a fiduciary or confidential relationship with plaintiff and owed plaintiff certain duties. Plaintiff does not specifically allege that the trial court erred in not giving any of his requested instructions, but it appears that plaintiff is complaining of the trial court's refusal to give the following requested instruction:

If you find that a confidential relationship of investment counselor and investor existed between Vincent DeSciose, Jr. and Fred Douglas, an employee of the Defendant, then you may find that the existence of

such confidential relationship was such a circumstance which you may consider in determining what inquiry, if any, it would have been reasonable to expect.

We determine that the trial court properly refused the requested instruction. A fiduciary relationship "arises whenever confidence is reposed on one side, and domination and influence result on the other; the relation can be legal, social, domestic, or merely personal." Black's Law Dictionary 626 (6th ed. 1990).

The record does not set out any facts showing that such a relationship existed. The mere existence of a broker-client relationship, without more, does not imply a confidential relationship. *Fey v. Walston & Co., Inc.*, 493 F.2d 1036 (7th Cir. 1974); *Russo v. Bache Halsey Stuart Shields, Inc.*, 554 F. Supp. 613 (N.D. Ill. 1982). We are not faced with facts such as those in *Norris & Hirschberg v. Securities & Exchange Com'n*, 177 F.2d 228 (D.C. Cir. 1949), where many of the 50 customers who testified at trial did not know what a margin account was or that they were buying on margin, or such as those in *Charles Hughes & Co. v. Securities and Exchange Com'n*, 139 F.2d 434, 435 (2d Cir. 1943), where the "customers were almost entirely single women or widows who know little or nothing about securities or the devices of Wall Street."

In this case, plaintiff was an able, experienced businessman, who used his own independent judgment with respect to his investments. He established a Cessna distributorship in Omaha in 1955. He opened a different private aircraft distributorship in Long Beach, California, in 1969. In 1975, he sold the Cessna distributorship back to Cessna and opened a different distributorship. At the time of trial, he operated businesses selling aviation parts (including engines) in Omaha, Long Beach, and Oklahoma City, Oklahoma. Plaintiff did a great deal of business with defendant, but did substantial business with other securities firms. Plaintiff sold 52,200 shares of Cessna stock through other brokers. During one period of time while defendant's agent was offering investments to plaintiff, plaintiff was selling corporate airplanes to defendant.

Plaintiff testified that during the time from 1972 to 1982, when defendant's agent called him, plaintiff asked questions

about the S.I.D. as to which sales were proposed. Plaintiff testified that he "asked the most intelligent questions I could think of at the time." Plaintiff did complain that he received "[i]ncorrect answers," but defendant's testimony showed that all pertinent information either was given to plaintiff or was available to him in printed reports or brochures. A typical report set out the location of the S.I.D., its purpose, and the relationship of defendant to the S.I.D. as fiscal agent. Plaintiff testified as to a lack of knowledge in all these areas. The jury apparently believed defendant's evidence in this regard.

The trial court did not err in refusing plaintiff's tendered instructions and in refusing to instruct the jury on plaintiff's theory of a fiduciary relationship with defendant.

In plaintiff's third assignment of error, he contends:

> The trial court erred in dismissing in part the first and second causes of action of Appellant's Second Amended Petition, and Appellant's third and fifth causes of action, because these causes of action contained an issue of material fact with respect to fraudulent concealment to be decided by the jury, and about which the trial judge failed to instruct.

Plaintiff contends the court erred in this respect because "these causes of action contained an issue of material fact with respect to fraudulent concealment to be decided by the jury." The alleged errors arose when the court dismissed those "causes of action" on defendant's motions on those issues.

In connection with this assignment of error, we first consider the allegation concerning the third and fifth "causes of action." With regard to the fifth cause, concerning the applicability of § 8-1118 to plaintiff's purchase of an S.I.D. No. 7 warrant on July 28, 1982, for $26,424.43, it is clear that that section has a 2-year statute of limitations. As to defendant's motion for directed verdict on that issue, plaintiff's counsel told the court at the argument on the motion, "I think that is probably an appropriate motion. I don't know that we have any particular response. That is a flat statute of two years." Although error is assigned as to this issue, the assignment is not argued in plaintiff's brief, and we consider it no further. The trial court did not err in this respect.

The trial court apparently dismissed the third "cause of action," which sets out a theory of recovery based on negligence, on defendant's motion made at the conclusion of plaintiff's evidence, as follows:

[Counsel for defendant]: Defendants would also move for a directed verdict on the third cause of action on Second Amended Petition. That cause of action alleges negligence in respect to all of the purchases that Mr. DeSciose has made from the defendants. There are 18 total purchases which are in issue, and the four-year common law statute of limitations provides no discovery period in the statute and there is no discovery period for this type of a claim of negligence provided in case law, and for that reason 16 out of the 18 purchases are barred by the statute of limitations.

The trial court stated that he was aware of two of them that "were in '82 and '83." The confusion engendered by the reference in the original petition to an S.I.D. No. 7 warrant purchased on November 24, 1983, apparently continued, although, as stated above, that factual allegation was omitted from all later filings. There is no reference in the operative petition to any purchases in 1983. Apparently, the court, at that time, was thinking of the October 13, 1981, purchase, which was not within the 4-year statute of limitations. Defendant again then specifically moved for directed verdicts on 16 of the claims of negligence. It is clear that defendant recognizes that two of plaintiff's claims are not barred by the statute—that is, the two claims concerning S.I.D. No. 7 warrants discussed above.

In its docket order entry of September 15, 1988, however, the trial court stated, in part, "It is further ordered that plaintiff's petition is dismissed as [sic] the third . . . [cause] of action." This order is in error as to two securities: the S.I.D. No. 7 warrants purchased October 13, 1981 ($50,000), and July 28, 1982 ($26,424.43). As stated above, the court was correct in excepting the S.I.D. No. 7 warrant of July 28, 1982, from its order of dismissal of the first two "causes of action" (that is, the claims based on fraud and fiduciary duty), and it erred in failing to except the purchase of the S.I.D. No. 7 warrant on

October 13, 1981, from the same dismissal. Plaintiff's assignment of error in this regard is valid to the extent described.

The trial court dismissed the third "cause of action" (the negligence theory) on defendant's motion. The reasons for this dismissal are not set out, but it is clear from the record that all of the negligence claims except the two S.I.D. No. 7 claims described in the preceding paragraph arose more than 4 years prior to the filing of the appropriate petitions, and unless the statute of limitations was somehow tolled, the statute would bar the actions. In determining that those negligence claims were barred, the trial court had the benefit of the jury's finding that the plaintiff had discovered the fraud or misrepresentation he alleged more than 4 years before the filing of the appropriate petitions. If the plaintiff had discovered facts about fraud and misrepresentation, those facts should also have led to the discovery of any negligence. The record shows that between July 1972 and July 1982, plaintiff had made approximately 209 purchases of various kinds, totaling, by plaintiff's evidence, $5,657,105.64 (of which $2,415,776.12 involved S.I.D. bonds and warrants). To contend that plaintiff knew nothing about these transactions except what defendant told him is to make a frivolous contention. To complain about 18 purchases out of approximately 209 over a 10-year period is to raise the concept of a "guaranteed return" to a new high.

Plaintiff then asserts that the court erred "in dismissing in part the first and second causes of action . . . ." The specifics of what is meant by dismissing "in part" are not set out, but apparently plaintiff has referred to the two S.I.D. No. 7 warrants described above. That matter has been determined. Insofar as plaintiff's alleged error in this regard concerns the bonds issued by S.I.D. No. 103 and purchased by plaintiff on May 1, 1980, the question as to the date of discovery of defendant's wrongdoing concerning the warrants in S.I.D. No. 103 was submitted in the second question to the jury, because the plaintiff's first amended petition, filed on September 2, 1986, sought recovery only for warrants issued by S.I.D. No. 103 between November 30, 1978, and September 28, 1979. As set out above, the jury's answer to the second question

submitted to it found that plaintiff had discovered the fraud or misrepresentation as to S.I.D. No. 103 warrants before September 2, 1982. In plaintiff's second amended petition, filed July 10, 1987, he sought recovery, for the first time, on S.I.D. No. 103 bonds which plaintiff had purchased on May 1, 1980. The trial court apparently held, as a matter of law, that if plaintiff had discovered fraud in S.I.D. No. 103 warrants before September 2, 1982, plaintiff had the chance to discover any fraud on S.I.D. No. 103 bonds 4 years before the filing of his petition on July 10, 1987. We agree. The evidence before the court is conclusive in that respect. The trial court did not err in dismissing plaintiff's claim as to S.I.D. No. 103 bonds.

The trial court did not err in any of the respects alleged by plaintiff except as to its dismissal of plaintiff's claim with regard to the S.I.D. No. 7 warrant purchased on October 13, 1981.

We note that the record presents various confusing facts that no one addresses. As an example, as mentioned above, the plaintiff's first petition sought recovery on a warrant issued by S.I.D. No. 7 on November 24, 1983. In plaintiff's first and second amended petitions no mention is made of this warrant. Nonetheless, at trial, in exhibit 6, plaintiff specifically offered a 17-page exhibit representing a warrant assigned to plaintiff from "Dain Bosworth Incorporated" on November 22, 1983. Defendant did not object to this offer. Similarly, the first question submitted to the jury refers to an exception, to wit, "except one of the two bonds sold 11/5/80." The two bonds referred to are apparently the two S.I.D. No. 7 bonds which plaintiff alleged were purchased on October 28, 1980. Defendant alleged the "11/5/80" date in its answer. The enigmatic reference to "one of the two bonds" is not questioned. Apparently the parties are aware of, and understand, all these items in the record. No one complains or explains.

In any event, the judgment of the trial court is affirmed in its entirety except as to its dismissal of plaintiff's claim arising out of his purchase of the S.I.D. No. 7 warrant on October 13, 1981. The cause is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

HASTINGS, C.J., BOSLAUGH, and CAPORALE, JJ., not participating.